IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

DANIEL HARRIS and LILLIAN HARRIS,    )
                                       )
          Plaintiffs,              )    TC-MD 150502N
                                       )
      v.                       )
                                       )
DEPARTMENT OF REVENUE,        )
State of Oregon,                   )
                                       )
          Defendant.          )    **FINAL DECISION**[1]

Plaintiffs appeal Defendant's conference decision dated September 9, 2015, for the 2011, 2012, and 2013 tax years. A trial was held on July 11, 2016, in the courtroom of the Oregon Tax Court in Salem, Oregon. Larry Glaze, CPA, appeared on behalf of Plaintiffs. Plaintiff Daniel Harris (Harris) testified on behalf of Plaintiffs. Debbie Smith (Smith), Tax Auditor, appeared on behalf of Defendant. Plaintiffs' Exhibits 1 through 4 were admitted without objection. Defendant's Exhibits A through G were admitted without objection.

## I. STATEMENT OF FACTS

Harris testified that, in 2008, he sold parts of his business D-Stake Mill to Universal Forest Products, Inc. (UFP). When Harris sold D-Stake Mill to UFP, he became an employee of UFP. (*See* Def's Ex A at 2). During the tax years at issue, Harris' job title was Sales Manager. (*See id.*) Harris testified that he made a lot of money for D-Stake Mill and UFP wanted him to continue what he had been doing for D-Stake Mill.

Harris testified that people in the lumber industry are "outdoor people" so they enjoy activities such as fishing. He testified that he developed a customer base over the last 15 to 18

---

[1] This Final Decision incorporates without change the court's Decision, entered December 14, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

years and has an established history of entertaining his customers, including certain standing traditions, such as a four-day fishing trip on the Rogue River. It was an opportunity to bond with customers and grow his business. Harris testified that he entertained customers in Sun River and took customers fishing for salmon and steelhead on the Columbia River.

Harris' employment agreement with UFP stated he was payed a base salary and also received incentive compensation based on sales. (Def's Ex A at 2, 7.) It further stated that Harris "shall be reimbursed, in accordance with [UFP's] company policy, for ordinary and reasonable documented business expenses incurred by [Harris] in the performance of [his] duties carrying out the terms of this Agreement, upon presentation of supporting documentation for such expenses and approval by [UFP]." (*Id.* at 2.) Harris testified that he was a nonconforming employee of UFP. In addition to his employment agreement including the written reimbursement policy, he testified that he had an oral agreement with UFP that he would continue to cover his travel and customer entertainment expenses associated with his sales activities. Harris testified that he requested reimbursement from UFP for expenses of a "corporate nature" and deducted his other, sales-related expenses.

A.      *Correspondence from UFP Regarding Reimbursement Policy*

Plaintiff and Defendant each provided letters from representatives of UFP regarding UFP's employee reimbursement policy and its application to Harris. An August 19, 2014, letter from Eric Miller, VPO Northwest of UFP, states in part: "To my knowledge Daniel Harris pays the majority of his travel and business expenses out-of-pocket rather than submitting expense reports." (Ptfs' Ex 1.) An October 22, 2014, email from Ron Schollaart (Schollaart), Director of Tax, UFP, to Defendant states, in part:

>      "[UFP] business expense reimbursement policy states that we will reimburse
>      employees for all expenses an employee incurs while on Company business so

long as they are properly documented, timely submitted (within 60 days), and approved by the company. This would include the cost of 1) business meals, 2) entertainment of business associates (customers, suppliers, employees, etc.), 3)

lodging, 4) transportation, 5) parking, storage, tolls, 6) air travel, 7) car rental, 8) gas, oil, and repairs, and 9) miscellaneous expenses.

"Based upon a conversation I had with [Harris] regarding the expenses in question, the expenses for entertaining business customers would have certainly qualified for reimbursement assuming that they had been timely submitted."

(Def's Ex A at 14.)

Schollaart sent another letter to Defendant on December 5, 2014, "to clarify and correct

statements that were previously made in [his] email correspondence dated October 22, 2014."

(Ptfs' Ex 2; Def's Ex A at 19.) He wrote, in part: "Upon further investigation into the details of

the business expense reimbursement arrangement with Daniel Harris, it was discovered that Mr.

Harris entered into a verbal agreement with [UFP] that falls outside of the company's normal

expense reimbursement policy." (*Id.*) Schollaart explained the terms of Harris' arrangement

with UFP, as explained to him by "Matthew Missad (former VP Legal and General Council [*sic*]

to [UFP], Inc., and currently serving as Chief Executive Officer):"

"It was the practice of Dan Harris to entertain his D-Stake customers as he saw fit in order to keep their business. In salary negotiations with [UFP] at the time of the acquisition, Mr. Harris negotiated a higher salary in return for him to continue to bear the cost of entertaining his customers. Therefore, expense reimbursements made to Mr. Harris as an employee of [UFP] related to customer entertainment were not eligible for reimbursement and were his sole responsibility for payment."

(*Id.*) Schollaart sent Defendant a third letter on August 11, 2015, in order to "clarify the

statement made in [his] letter dated December 5, 2014." (Ptfs' Ex 3.) That letter states:

"As a shareholder of D-Stake Mill, Inc., of which certain assets were acquired by [UFP] in 2008, Dan Harris was in the practice of entertaining his clients in the ordinary course of business. Upon becoming an employee of [UFP], the company and Mr. Harris negotiated his salary with the expectation that these entertainment expenses would continue in the same manner and entered into a verbal agreement

to that effect. These entertainment expenses were ordinary and necessary as such as they are common and accepted in Mr. Harris's trade and they were appropriate and helpful to the company. Expenses of a more corporate nature (e.g., supplies, mileage, etc.) would be covered under the normal reimbursement policies but customer entertainment are [*sic*] considered to be covered by this agreement, which supersedes the normal reimbursement policy."

(*Id.*) Finally, on March 1, 2016, Bradley T. French (French), Director of Legal Services, UFP, wrote a letter to this court regarding Harris' agreement with UFP:

"As a former owner of [D-Stake Mill], Mr. Harris was not accustomed to the more technical expense reimbursement programs used by UFP employees for submission, review and approval of ordinary business expenses. As part of operating that business, Mr. Harris regularly entertained customers, staff and vendors in the ordinary course of business. * * * At the time of the acquisition, and as part of the agreement to attract Mr. Harris on as an employee, it was agreed that [he] would not be required to utilize UFP's formal system for business expense reporting and reimbursement. Moreover, consistent with a nonaccountable plan, Mr. Harris' starting base salary was adjusted in anticipation that he would continue entertaining his current customers as was reasonable and customary for the continued benefit of the purchaser, UFP."

(Ptfs' Ex 4.) Plaintiffs' representative asserted at trial that French's letter was the best and most clear explanation of UFP's reimbursement policy with respect to Harris.

B.    *Plaintiffs' Tax Returns, Audit Adjustments, and Supporting Documentation*

On their 2011 Schedule A, Plaintiffs reported total unreimbursed employee business expenses of $25,931. (Def's Ex B at 5, 7.) That amount was comprised of $5,592 in vehicle expenses; $1,815 in parking fees, tolls, and transportation; $6,620 in travel expenses while away from home overnight; $1,075 in meals and entertainment expenses; $165 in professional subscriptions; and $10,664 in other expenses. (*Id.*)

On their 2012 Schedule A, Plaintiffs reported total unreimbursed employee business expenses of $44,646, comprised of $9,158 in vehicle expenses; $1,369 in parking fees, tolls, and transportation; $6,970 in travel expenses while away from home overnight; $1,610 in meals and entertainment expenses; and $25,539 in other expenses. (Def's Ex C at 7, 11.)

On their 2013 Schedule A, Plaintiffs reported total unreimbursed employee business expenses of $43,927, comprised of $10,452 in vehicle expenses; $1,225 in parking fees, tolls, and transportation; $8,890 in travel expenses while away from home overnight; $1,986 in meals and entertainment expenses; $88 in professional subscriptions; and $21,286 in other expenses. (Def's Ex D at 12, 17.) Defendant disallowed all of Plaintiffs' unreimbursed employee business expenses for each tax years. (*See* Def's Exs D at 27, E at 2, 6-7.)

Plaintiffs failed to submit any documentation to the court to substantiate their claimed unreimbursed employee business expenses for any of the three tax years at issue. Harris testified that he has documentation for his expenses and he sent it to Defendant. He apologized for his confusion and failure to submit that documentation to the court.

C.     *Intent to Evade Penalty*

Defendant imposed upon Plaintiffs a 100 percent penalty under ORS 314.400(6) based on Defendant's determination that Plaintiffs filed false returns with the intent to evade tax for each of the three tax years at issue. (Def's Ex F at 1-2.) Defendant determined that Harris made "false statements" about whether he had sought or received reimbursement from UFP; the purpose of his travel and other expenses involving his wife; and "about people on whose behalf [he] claimed to have incurred business costs in 2011." (*Id.* at 1.) Defendant found Harris demonstrated an "ongoing pattern of claiming costs of a personal nature as business expenses during 2011 and 2012, and this pattern likely continued into 2013. (*Id.*) Defendant found Harris "submitted certain receipts for the 2011 audit which were for costs incurred in 2012 that had been reimbursed by UFP in 2012." (*Id.*) Defendant noted that Harris is a "sophisticated business man" who has been in the business for "decades" and has experience with requesting and receiving reimbursements from UFP. (*Id.* at 1-2.)

Smith questioned Harris about multiple specific documents that Defendant gathered during its audit of Plaintiffs' unreimbursed employee business expenses. A mileage chart reported 10,553 business miles for the 2011 tax year. (Def's Ex F at 13-14.) Harris testified that he prepared the chart and received reimbursement from UFP for the mileage listed. He testified that the mileage chart was erroneously submitted to Defendant. Harris testified that he sought reimbursement for mileage associated with corporate functions, but not associated with sales.

A multi-page spreadsheet that Defendant identified as "Attached to Employer Email dated 1/6/15" lists expenses from January through May 2011 for items categorized as gas, business meals, entertainment, car rental, airfare, hotel rooms, and miscellaneous. (Def's Ex F at 6-9.) Harris testified that the spreadsheet is accurate and lists reimbursements he received from UFP. He acknowledged that he erroneously deducted some of the reimbursed expenses – such as a payment to Holiday Inn – on his income tax return. (*See* Def's Ex F at 6, 18.) Harris testified that he reviewed his records and UFP reimbursements to determine what should have been deducted as unreimbursed. He testified that he found only five or six duplicated expenses, which he thought he corrected.

Smith asked Harris about a Rogue fishing trip he took in 2011. (*See* Def's Ex F at 92-95.) Harris testified that the trip cost was $1,500 per person, for a total of $6,000 for four guests. (*See id.* at 92.) He testified that the guests on this trip were Harris, his wife, one of Harris' customers, and the customer's wife. Harris testified that he did not think he was reimbursed for that Rogue fishing trip, but was not 100 percent sure. He testified that he did not claim the cost incurred for his wife on the Rogue trip. Smith noted that Harris' guest on the Rogue fishing trip is also one of his friends on Facebook. (*See id.* at 68, 92.) Harris testified that his customers are his acquaintances, not his friends.

Smith asked Harris about another expense associated with one of his Facebook friends: a dinner on May 28. (Def's Ex F at 58, 68.) Harris testified that the individual is a customer who works for the State of Oregon and the dinner was to discuss a donation by UFP to Meals on Wheels, which is run by that individual.

Smith asked Harris about a trip to Las Vegas in 2012. (*See* Def's Ex G at 31-32, 35-41.) Harris testified that he attended an erosion control show in Las Vegas. (*See id.* at 37-38.) The show dates were February 26-29, 2012. (*Id.*) Harris' airline tickets and hotel invoices reveal he traveled to Las Vegas on February 29, 2012, arriving at 4:30 p.m., and returned to Oregon on March 4, 2012. (*Id.* at 35-36, 38-41.) His wife joined him on the trip. (*See id.*) Harris testified he thought he went to Las Vegas early on February 29. He acknowledged that he has family in Las Vegas, but testified he also has customers there.

Smith also asked Harris about expenses claimed for a stereo system, tables rented for 16 days, a storage unit, and additional items that Harris claimed were customer gifts. (*See* Def's Ex G at 7, 11-12, 26-28, 66, 69, 72-73.)

Harris testified that he previously responded to Defendant regarding expenses reimbursed by UFP and sought to correct those errors. He testified that, during the tax years at issue, he kept all of his expenses in one file and would try to determine which were "corporate in nature." Harris testified that he had an "ongoing dialogue" with UFP about his expenses. He testified that he did not deduct *any* personal expenses and he did not try to evade any taxes. Harris testified that he tried to comply with the letter of the law and pay his taxes. He testified that, since the tax years at issue, he has renegotiated his contract with UFP effective January 2016 so that he receives reimbursement for all expenses.

/ / /

## II.  ANALYSIS

The issues presented for the 2011, 2012, and 2013 tax years are: (1) whether Plaintiffs are entitled to any deductions for unreimbursed employee business expenses; and (2) whether the intent to evade penalties imposed under ORS 314.400(6)[2] should be upheld.

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]"  ORS 316.007(1).  "Any term used in this chapter has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter."  ORS 316.012.  On the issue of employee business expenses, "Oregon law makes no adjustments to the rules under the [IRC] and therefore, federal law governs the analysis."  *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

"All proceedings * * * of the tax court shall be original, independent proceedings and shall be tried * * * de novo."  ORS 305.425(1).  In a de novo proceeding, the tax court considers properly admitted testimony and evidence presented at trial "to reach the correct result without regard for either party's prelitigation position."  *Reed v. Dept. of Rev.*, 310 Or 260, 268, 798 P2d 235 (1990).  In making its determination, "[t]he court is not limited to the evidence that a taxpayer presented during an audit by the Oregon Department of Revenue."  *Shammel v. Dept. of Rev.*, TC-MD 120838D, WL 3964348 at *3 (Jul 31, 2013).

/ / /

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to the 2011 edition.  Although the 2009 ORS are applicable for the 2011 tax year, there is no material difference between the 2009 and 2011 versions of the ORS sections cited in this Decision.

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. Plaintiffs must establish their claim by a preponderance of the evidence, which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed*, 310 Or at 265.

A.      *Unreimbursed Employee Business Expenses*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly allowed under the IRC.

1.      *Reimbursement policy*

"Numerous courts have held that an expense is not 'necessary' under § 162(a) when an employee fails to claim reimbursement for the expense, incurred in the course of his employment, when entitled to do so." *Orvis v. Comm'r*, 788 F2d 1406, 1408 (9th Cir 1986) (citations omitted). The U.S. Tax Court explained,

> "[An employee] cannot deduct as his own expenses amounts which are not his, but which are, to the contrary, expenses of his corporate employer. * * * That

[the] petitioner was not in fact reimbursed does not change expenditures made on behalf of the corporation into ordinary and necessary expenses of the petitioner."

*Worth v. Comm'r*, 20 TCM (CCH) 216 (1961) (citations omitted). The court in *Orvis* described the underlying policy of the rule:

"A bright line rule prohibiting deductions for reimbursable expenses avoids the difficult inquiry into the taxpayer's knowledge, and gives the taxpayer an incentive to determine which expenses are reimbursable. The rule also forecloses an avenue for tax manipulation by preventing the taxpayer from converting a business expense of his company into one of his own simply by failing to seek reimbursement."

*Orvis*, 788 F2d at 1408 (citations omitted).

A company might have a reimbursement policy covering only certain types or amounts of expenses, but also expect employees to incur expenses on behalf of the company beyond those that are covered by the reimbursement policy. In *Noyce v. Comm'r*, 97 TC 670, 672-76 (1991), the taxpayer, vice chairman of the Intel board, used his private jet for some company travel. Intel had a written policy that it would reimburse travel "at commercial airline rates," and did not make an exception for first class airfare or private air travel even when it was in Intel's interest. *Id.* at 677-78. "Intel [also] had a written travel reimbursement policy explicitly stating that it expected its officers to incur certain expenses for Intel's benefit, despite the fact that such expenses would not be reimbursed." *Id.* at 684. Under those circumstances, the court held that the taxpayer could deduct expenses associated with his private jet travel beyond what would have been reimbursed by Intel for commercial airfare. *Id.* at 694.

In this case, Harris' employment agreement with UFP included a reimbursement policy that, by its terms, applied to all of Harris' business expenses. That was acknowledged in the October 22, 2014, email from Schollaart to Defendant. Notwithstanding the written policy in his employment agreement, Harris testified that he had a separate oral agreement pursuant to which

he could not receive reimbursement for sales-related expenses and other expenses not of a "corporate" nature. He explained that he negotiated greater compensation in exchange for agreeing to pay his own sales-related and non-corporate expenses.

As illustrated by the decision in *Noyce*, it is possible that a company may expect its employees to incur expenses beyond those covered by the company's reimbursement policy. In this case, it is plausible that Harris made an oral agreement with UFP as he described. However, the existence of the oral agreement is suspect for two reasons. First, the agreement was never committed to writing and only described in letters after the audit began. That is in contrast with the fact that Harris' employment agreement included a written reimbursement policy that, by its terms, included travel and entertainment expenses. Given that UFP's Director of Tax only discovered the existence of the oral agreement upon "further investigation" illustrates why it is surprising that UFP would not have committed its agreement with Harris to writing. *Cf. Noyce*, 97 TC at 684 (company had written policy stating that it expected officers to incur expenses not reimbursable by the company). Second, one of the explanations given for the agreement – that Harris was not accustomed to UFP's "more technical expense reimbursement programs" – does not make sense in light of the fact that Harris was indisputably subject to UFP's reimbursement policy at least for "corporate" type expenses.

Even if the court were to find that Harris had an oral agreement with UFP contrary to the terms of his employment agreement, the terms of the oral agreement are too vague for the court to determine which expenses were subject to UFP's reimbursement policy and which were not. When asked about his method for distinguishing between reimbursable and non-reimbursable expenses, Harris testified that he kept all of his expenses in one file and would try to determine which were corporate in nature. That method was clearly inadequate to keep his expenses in

order, as revealed by the fact that Harris deducted multiple items on his Schedules A for which he had previously received reimbursement from UFP.

2.      *Business vs. personal expenses; substantiation*

Many of the business expenses claimed on Plaintiffs' Schedules A pertained to travel. Generally, taxpayers may deduct traveling expenses that are reasonable and necessary in the conduct of the taxpayer's business and directly attributable to it:

> "If a taxpayer travels to a destination and while at such destination engages in both business and personal activities, traveling expenses to and from such destination are deductible only if the trip is related primarily to the taxpayer's trade or business. If the trip is primarily personal in nature, the traveling expenses to and from the destination are not deductible even though the taxpayer engages in business activities while at such destination. * * *."

> "Whether a trip is related primarily to the taxpayer's trade or business or is primarily personal in nature depends on the facts and circumstances in each case. The amount of time during the period of the trip which is spent on personal activity compared to the amount of time spent on activities directly relating to the taxpayer's trade or business is an important factor in determining whether the trip is primarily personal. * * *."

Treas Reg § 1.162-2(b)(1 - 2). Generally, travel expenses attributable to the taxpayer's spouse and children and not deductible. Treas Reg § 1.162-2(c).

Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) ("Taxpayers are required to maintain records sufficient to substantiate their claimed deductions"). Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2d Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985); *see, e.g., Hoopengarner v Comm'r*, 86 TCM (CCH) 723

(2003). However, IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A)(i). Treas Reg § 1.274-5T(a).

Plaintiffs failed to submit documentary evidence of their claimed unreimbursed employee business expenses. Harris explained that he previously submitted his documentation to Defendant and did not understand that he needed to submit that documentation to this court in order for the court to consider it. Smith acknowledged at trial that Defendant received documentation from Plaintiffs. She stated at trial that she had determined that the documentation provided by Plaintiffs fell into three categories: (1) evidence of legitimate business expenses for which Harris could have received reimbursement from UFP; (2) evidence of legitimate business expenses for which Harris already received reimbursement from UFP; and (3) evidence of personal expenses. In Smith's view, Plaintiffs improperly deducted expenses in all three categories. Moreover, she was unable to determine precisely which expenses fell into which category.

As explained above, this is a de novo review and the court may only review the evidence that is properly admitted. It is unfortunate that Plaintiffs misunderstood the court's procedures and failed to provide documentary evidence of Harris' expenses. Ultimately, Plaintiffs failed to prove by a preponderance of the evidence that they were entitled to any deductions for unreimbursed employee business expenses for the 2011, 2012, and 2013 tax years.

B.    *Intent to Evade Penalty*

ORS 314.400(6)(b) states that a 100 percent penalty shall be assessed and collected if a "report or return was falsely prepared and filed with intent to evade the tax[.]" To be subject to the penalty, Plaintiffs' return must have been both (1) falsely prepared, and (2) filed with the

intent to evade the tax. A return is falsely prepared if it is incorrect. *DeBoer v. Dept. of Rev.*, TC-MD 140027N, WL 4783255 at \*10 (Sept 25, 2014). This court has previously considered relevant definitions of "intent to evade" as well as the legislative history of ORS 314.400(6) and concluded "that the 'intent to evade' requires a purposeful act or acts and not mere negligence. *DeBoer*, WL 4783255 at \*11. Further, this court has concluded that an 'intent to evade' taxes encompasses instances of tax fraud and, therefore, considers tax fraud case law as persuasive authority in applying the 'intent to evade' standard." *Id*. Because taxpayers seldom confess tax fraud, courts have "inferred intent from various kinds of circumstantial evidence." *Bradford v. Comm'r*, 796 F2d 303, 307 (9th Cir 1986). "The 'badges of fraud' include understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealing assets, and failure to cooperate with tax authorities." *DeBoer*, WL 4783255 at \*11, citing *Bradford*, 796 F2d at 307.

Harris testified under oath that he did not intend to evade the tax, so "the burden of proof going forward shifts to Defendant." *Hansen v. Dept. of Rev.,* TC–MD 130387D, WL 2195546 at \*6 (May 27, 2014). The court must find that Harris intended to evade the tax for each tax year at issue in order for the corresponding penalty to be upheld. *See, e.g., Castillo v. Comm'r*, 84 TC 405, 409 (1985) ("respondent must show that some part of an underpayment was due to fraud for each taxable year for the corresponding addition to tax to be upheld").

Based on Defendant's audit report, the court understands Defendant's reasons for imposing the intent to evade penalty to be as follows: (1) Harris deducted multiple items for which he had received reimbursement from UFP; (2) Harris deducted travel expenses that were primarily, if not solely, personal in nature; (3) Harris deducted entertainment expenses for activities with personal friends, indicating that such expenses were primarily personal in nature;

and (4) Harris is a sophisticated and experienced businessman who understands how to prepare expense reports and distinguish business from personal expenses.

With respect to Harris' deduction of previously reimbursed items, Harris acknowledged that he deducted business expenses on Plaintiffs' 2011 income tax return for which he received reimbursement from UFP. Furthermore, the testimony and evidence presented at trial revealed that Harris received reimbursement from UFP for 10,533 business miles in 2011. On Plaintiffs' 2011 income tax return, Harris took a mileage deduction based on 10,500 business miles. (Def's Ex B at 7.) Harris did not offer any evidence or testimony to suggest that the 10,500 miles reported on his 2011 income tax return differed from the 10,533 miles for which he previously received reimbursement from UFP. The court concludes that Harris took a 2011 mileage deduction despite having been reimbursed by UFP for the same mileage.

With respect to Harris' deduction of personal travel expenses, the testimony and evidence presented at trial revealed that Harris deducted expenses associated with Plaintiffs' trip to Las Vegas in 2012 that lacked a business purpose and was primarily personal in nature. Harris claimed that the trip to Las Vegas was to attend an erosion control show, but he arrived in Las Vegas at 4:30 p.m. on the last day of the show. Even if Harris engaged in some business activity on part of one day of his trip to Las Vegas, he provided no evidence to support a finding that he engaged in any business activities on the remaining four days of the trip. The court concludes that Plaintiffs' trip to Las Vegas in 2012 was primarily personal in nature.

With respect to Harris' deduction of entertainment expenses for activities with alleged personal friends, Defendant presented evidence that Harris is "Facebook friends" with some individuals that he identified as customers. Harris testified in response that the individuals are his acquaintances, not friends. On this issue, the court agrees with Plaintiffs. It is common for

individuals and businesses to network with prospective clients and customers via social media websites. Harris testified that he spent years building relationships with this customers, so it is reasonable that he may have used Facebook to foster those relationships. The fact that some of Harris' customers are his Facebook friends does not invalidate the business purpose of activities to entertain those customers.

With respect to Harris' sophistication and level of experience, the court agrees with Defendant. Harris testified regarding his many years of experience in business. Defendant offered into evidence Harris' own records and reports to show that Harris was aware of proper recordkeeping and reporting practices.

The evidence presented by Defendant creates an inference that Harris intended to evade taxes for the 2011 and 2012 tax years. Defendant did not provide any evidence of Harris' intent to evade the tax for the 2013 tax year, and the court will not extend the inference to that tax year. Harris failed to offer any evidence to rebut the inference that he intended to evade 2011 and 2012 taxes. Harris attributed each of his incorrect deductions to sloppiness, but that explanation is hard to reconcile with the fact that Harris kept sufficient records to receive reimbursement from UFP. Harris failed to present any evidence to support a finding that each of the incorrect deductions was merely a mistake. The intent to evade penalty imposed under ORS 314.400(6) is upheld for the 2011 and 2012 tax years, and abated for the 2013 tax year.

### III. CONCLUSION

After careful consideration, the court finds that Plaintiffs failed to prove by a preponderance of the evidence that they are entitled to any deductions for unreimbursed employee business expenses for the 2011, 2012, and 2013 tax years. The court further finds that Defendant properly imposed the intent to evade penalty under ORS 314.400(6) for the 2011 and

2012 tax years. Defendant failed to present any evidence supporting its imposition of the intent

to evade penalty for the 2013 tax year, so the penalty is abated for that year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs are not allowed a deduction for

unreimbursed employee business expenses for the 2011, 2012, and 2013 tax years.

IT IS FURTHER DECIDED that the 100 percent intent to evade penalty imposed under

ORS 314.400(6) is upheld for the 2011 and 2012 tax years, and abated for the 2013 tax year.

Dated this ____ day of January 2017.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on January 4, 2017.*